NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ALBERT ABDULLAH MATEEN, | : | Civil Action No. 12-6849 (CCC) |
| Plaintiff, | : | |
| | : | **OPINION** |
| v. | : | |
| AMERICAN PRESIDENT LINES et al., | : | |
| Defendants. | : | |

**Cecchi**, District Judge:

This matter comes before the Court upon Defendants' motion to dismiss Plaintiff's Complaint under Rule 12, and Plaintiff's opposition to the same. Submissions made in support of and in opposition to the instant motion have been considered by the Court.[1] For the reasons expressed below, Defendants' motion will be granted, and Plaintiff's federal claims will be dismissed with prejudice. The Court declines exercise of supplemental jurisdiction over Plaintiff's state law claims.

## I. BACKGROUND

The following facts are taken from Plaintiff's Complaint and assumed to be true for purposes of the instant motion. Plaintiff asserts that he is a religious Muslim and, "[a]s part of

---

[1] The Court considers any new arguments not presented by the parties to be waived. See Brenner v. Local 514, United Bhd. Of Carpenters & Joiners, 927 F.2d 1283, 1298 (3d Cir. 1991) ("It is well established that failure to raise an issue in the district court constitutes a waiver of the argument.").

his religious observance, . . . wears a Taj and . . . has a beard."[2] Compl. at 6-7. Plaintiff also asserts that, in November 2011, he attempted to enter the premises of American President Lines ("APL"), but a certain employee of the APL prevented such entry because Plaintiff was wearing a taj and had a beard. See id. at 7. Numerously repeating that he is an "Inpropia Persona Sui Juris," see, generally, Compl., Plaintiff asserts that the APL's election to prohibit Plaintiff's entry onto the APL's property caused him "specific and serious mental anguish" and "emotional injury and mental anguish, humiliation and embarrassment" and, thus, violated his First and Fourteenth Amendments rights.[3] See id. at 8-9. Defining the APL's election as an act of law enforcement, Plaintiff now seeks $13 million in compensatory damages and, also, $14 million in additional damages from the employee who denied him entry to the APL's private property and from the APL's president, Kenneth Glenn ("Glenn"). See id. at 9-10.[4] Plaintiff also seeks relief in the form of an order enjoining the APL "from targeting Plaintiff for surveillance." Id. at 10.

Defendants made appearance in this matter and moved for dismissal of the complaint under Federal Rule of Civil Procedure 12(b)(6). Defendants noted that Plaintiff has "ha[d] a history of filing meritless claims against [the] APL [in general and Glenn, in particular, and that

---

[2] The word "taj" defines a version of taqiyah. "Taqiyah" is a collective term referring to rounded caps that could be worn for religious and non-religious purposes; a conical taquiyah, often worn by Muslim men of Turkish, Balkan and Central Asian descent, is referred to as "taj." See, e.g., A Window on City's Islamic Heritage, Shanghai Daily (Benchmark) (Apr. 21, 2013); see also Malathi Nayak, Headley's Chicago, Indian Express (Contify.com) (May 1, 2010).

[3] Plaintiff also made unelaborated references to employment law, as well as 42 U.S.C. 2000(d), which is a provision governing federally subsidized programs, and "laws of the State of New Jersey." Compl. at 5-6. That being said, Plaintiff concedes that he is neither employed by the APL nor has or had any employment-like or business relationship with it. See id. at 7. Moreover, there is no dispute that the APL is a privately-owned – rather than a federally-funded – enterprise that operates, inter alia, a certain freight container terminal in Kearny, New Jersey, which is the particular premises Plaintiff tried to enter. See id. at 2.

[4] Plaintiff's compensatory damages demands are subdivided into $5 million and $8 million requests, jointly yielding the $13 million figure.

2

Plaintiff commences his legal actions] only to abandon [his] claim[s] after confronted with motion[s] to dismiss."[5] Defs.' Mot. at 6. Defendants also noted that neither the APL nor Glenn, nor any of APL's employees, or even vendors, is a state actor. See id. at 7. Building on this fact, Defendants maintain that: (1) Plaintiff's challenges, be they rooted in the First or Fourteenth Amendments, are necessarily deficient for failure to meet the state action requirement; (2) Plaintiff's employment-law claims, if any, are facially meritless since there neither was nor is any employment or employment-like relationship between the APL, Glenn, APL's vendors, etc. and Plaintiff, and Plaintiff never asserted such a relationship, and (3) no provision governing federally-funded projects could be implicated in this matter since the APL runs wholly private and privately subsidized operations. See id. at 10-21. Finally, turning to Plaintiff's passim references to state law, Defendants maintain that Plaintiff's state law claims should be dismissed, either without prejudice upon this Court's decline of ancillary jurisdiction or, alternatively, with prejudice, on the basis of the doctrine of res judicata which Defendants invoked in light of Judge Chrystal's decision. See id. at 21-25; see also this Opinion, note 5 (noting Plaintiff's proceedings before Judge Chrystal).

Plaintiff opposed Defendants' motion in a statement effectively reiterating his Complaint, see Pl.'s Opp., and accompanied the same by a document he called a "judicial notice," in which he reminds this Court to construe his claims liberally and to not violate his rights by departing

---

[5] As an example of such prior actions, Defendants submitted a copy of the decision entered in Mateen v. American President Lines et al., Index No. UNN-L-143-12, an action adjudicated in the Superior Court of New Jersey, Law Division. See Ds.' Ex., Docket Entry No. 8-1, at 4-9. In that matter, Plaintiff raised factual challenges substantively indistinguishable from those at bar and other additional allegations, such as defamation, slander and libel on the part of the APL; all these facts were litigated under state law provisions analogous to the federal provisions invoked here. See id. Judge Lisa F. Chrystal ("Judge Chrystal") dismissed Plaintiff's aforesaid state action with prejudice, finding all his claims without merit. See id.

3

from established precedent.[6] See Pl.'s Ex. to Pl.'s Opp. 11-1. Defendants replied to Plaintiff's opposition, restating that Plaintiff's challenges failed to meet the notice pleading requirement. See Defs.' Reply. Plaintiff responded by filing an unauthorized sur-reply, see Pl.'s Sur-reply, Docket Entry No. 13, and when Defendants objected, see Defs.' Letter, Docket Entry No. 14, he moved to strike that objection. See Pl.'s Letter, Docket Entry No. 15.

II.    DISCUSSION

A.    **Standard of Review**

In light of Plaintiff's "judicial notice" filings, the Court finds it warranted to explain the meaning of the phrase "notice pleading" that lies at the heart of Rule 8 and determines whether a complaint survives Rule 12(b)(6) review.

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally. See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007); Haines v. Kerner, 404 U.S. 519, 520-21 (1972); see also United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992). The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions." See Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Thus, the court must first "take note of the elements a plaintiff must plead to state a claim." Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009). The court must then accept as true all of a plaintiff's well-pleaded factual allegations. See Fowler, 578 F.3d at 210-11. The court, however, is obligated to disregard any conclusory allegations proffered in the complaint. See id. For example, the court must ignore

---

[6] Plaintiff's "judicial notice" seemingly grows out of his misunderstanding of Defendants' references to Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009), i.e., the Supreme Court decisions that clarified the notice pleading requirement, since Plaintiff's "judicial notice" is heavily laden with repeated statements that he is putting this Court and Defendants "on notice."

4

legal conclusions or factually unsupported accusations which merely state that "the-defendant-unlawfully-harmed-me." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555). Once the well-pleaded facts have been distilled and the conclusory allegations are fully factored out, a court must determine whether these well-pled facts "are sufficient to show that plaintiff has a 'plausible claim for relief.'" Fowler, 578 F.3d at 211 (quoting Iqbal, 556 U.S. at 679). Determining plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679. Plausibility "is not akin to a 'probability requirement,'" rather, "it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. at 678 (quoting Twombly, 550 U.S. at 545). Therefore, even well-pled facts which only suggest the "mere possibility of misconduct" fail to show that the plaintiff is entitled to relief. Fowler, 578 F.3d at 211 (quoting Iqbal, 556 U.S. at 679).

Here, Plaintiff's Complaint, his opposition to Defendants' motion, and his unauthorized sur-reply are filled with Plaintiff's opinions as to what the law is or should be, repeated reference to the Latin phrase "sui juris"[7] and conclusory, non-factual statements, such as "[t]he APL['s] widespread constitutional abuses have flourished as a result of and are directly and proximately caused by policies, practices, and/or customs devised, implemented and enforced by Glenn . . . and [the] APL." Compl. at 2; repeated in Pl.'s Opp. at 2; Pl.'s Sur-reply at 2. However, neither Plaintiff's opinions about the law nor his conclusory allegations could qualify as facts. *That deficiency is the one to which Defendants refer when they state in their motion papers that*

---

[7] "Plaintiff's resort to the term 'sui juris' only underscores the deficiency of [his] legal position: the term 'sui juris' does not mean 'in one's own right,' as Plaintiff seems to believe; rather, it means 'of one's own laws' and, as such, it correctly underscores the invalidity of Plaintiff's legal position [based on his own interpretations of law having little in common with the actual legal regime]." Abdullah v. New Jersey, No. 12-4202, 2012 U.S. Dist. LEXIS 99021, at *27 (D.N.J. July 16, 2012).

5

Plaintiff failed to comply with the "notice pleading" requirement. See Defs.' Brief at 10-13. Hence Plaintiff's statements that he was putting Defendants "on notice" – or that he was putting this Court "on notice" – could not cure this qualitative shortcoming. See Imoore v. Gasbarro, No. 12-2605, 2012 U.S. Dist. LEXIS 73114, at *16 (D.N.J. May 24, 2012) ("[A] pleading must indicate 'the who, what, when, where, and how: the first paragraph of any newspaper story . . . .'") (citations omitted).

The above-detailed legal standard guides the Court's ruling on Defendants' Fed R. Civ. P. 12(b)(6) motion. Thus, to survive dismissal upon Defendants' motion, Plaintiff's Complaint must contain *sufficient facts* which, if accepted as true, plausibly allege a viable cause of action. See Iqbal, 556 U.S. at 678.

## B. Failure to Meet the Color of Law Requirement

To proceed on a claim under 42 U.S.C. § 1983, a plaintiff must show that a person acting under color of state law deprived the plaintiff of a right secured by the Constitution or laws of the United States.[8] "The ultimate issue in determining whether a person is subject to suit under § 1983 is the same question posed in cases arising under the Fourteenth Amendment: is the alleged infringement of federal rights 'fairly attributable to the State?'" Rendell-Baker v. Kohn, 457 U.S. 830, 838 (1982) (citation omitted); see also Lugar v. Edmondson Oil Co., 457 U.S. 922, 928

---

[8] 42 U.S.C. § 1983 provides in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

(1982) (noting that the "color of law" requirement of § 1983 matches the "state action" requirement of the Fourteenth Amendment). In other words, "a State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." Blum v. Yaretsky, 457 U.S. 991, 1004 (1982). Thus, a non-governmental organization is usually not subject to § 1983 claims. In some circumstances, though, the conduct of a private party may be "fairly attribut[ed] to the State," Lugar, 457 U.S. at 937 (1982); accord Filarsky v. Delia, 132 S. Ct. 1657, 1661 (2012); and therefore may constitute action under color of state law. Such circumstances are rare, see Estades-Negroni v. CPC Hosp. San Juan Capestrano, 412 F.3d 1, 4 (1st Cir. 2005) (reflecting on the issue), and the plaintiff bears the burden of proving that a private party's acts constituted a state action. See Flagg Bros. v. Brooks, 436 U.S. 149, 156 (1978).

The Supreme Court has used several theories to determine whether an action was taken under color of state law or amounted to state action. These theories yielded four tests: (1) the public function test enunciated in Flagg, 436 U.S. 149;[9] (2) the state compulsion test articulated in Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970);[10] (3) the symbiotic relationship test coined in Burton v. Wilmington Parking Authority, 365 U.S. 715 (1961);[11] and (4) the entwinement test

---

[9] The public function test requires that the private entity exercise powers that are traditionally exclusively reserved to the State, such as holding elections, see Flagg, 436 U.S. at 157, or exercising the power of eminent domain. See Jackson v. Metropolitan Edison Co., 419 U.S. 345, 353 (1974).

[10] The state compulsion test requires that a state exercise such "coercive power or . . . provide[] such significant encouragement, either overt or covert, that the [private party's] choice must in law be deemed to be that of the State." Blum, 457 U.S. at 1004.

[11] In Burton, the defendant was a restaurant located in a municipally-owned parking garage. That restaurant refused to serve the plaintiff, who was an African-American. The plaintiff sued, alleging that the restaurant's actions violated the Fourteenth Amendment. The

detailed in Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. 288 (2001).[12]

Here, Plaintiff's relevant allegations are limited to the statement that "the APL is a container transportation and shipping company providing services . . . through a network [of] intermodal freight transport operations." Compl. at 5 (capitalization removed).[13] Since that assertion does not provide any facts indicating that the APL is acting under color of law, Plaintiff failed to meet his burden of showing that the APL is a state actor. Moreover, even considering Plaintiff's status as a pro se litigant, there is no factual basis for the Court to conclude that the APL's actions could fairly be attributed to the State.

---

Burton Court found that the parking garage, and therefore the city, profited from the discrimination, and that the profits were "indispensable elements in . . . the financial success of a government agency." 365 U.S. at 724. Consequently, the Court held, "the State has so far insinuated itself into a position of interdependence with [the restaurant] that it must be recognized as a joint participant in the challenged activity," and thus the restaurant's discrimination was state action. Id. at 725. The Burton test is also known as the nexus/joint action test.

[12] The entwinement test requires that the private entity be "entwined with governmental policies" or that the government be "entwined in [the private entity's] management or control." Brentwood, 531 U.S. at 296 (citing Evans v. Newton, 382 U.S. 296, 299, 301 (1966)). The crucial inquiry under the entwinement test is whether the "nominally private character" of the private entity "is overborne by the pervasive entwinement of public institutions and public officials in its composition and workings [such that] there is no substantial reason to claim unfairness in applying constitutional standards to it." Id. at 298.

[13] The process of intermodal freight transportation means that the freight, typically packed in an intermodal container, is transported through a consecutive use of different, often multiple, modes of transportation, such as a plane, a railroad, a ship, a truck, etc., without physical handling or repacking of the freight during the changes of the transportation modes. See, e.g., http://www.intermodal.org/information/factsheet.php; see also Brian Solomon, Intermodal Railroading 128-43 (Voyageur Press, 2007). There are numerous intermodal transportation companies in the United States and all over the world. See, e.g., Intermodal Railroading 188-89 (describing the APL as an American "ocean carrier," COSCO as the "leading steamship company" of China, Evergreen Marine as a "Taiwan-based steamship company," K-Line, Mitsui O.S.K., NYK Line and YS Line as Japanese steamship and shipping companies, Maersk as a "Danish-owned shipping company," NOL as "a steamship company based in Singapore," OOCL as a "Hong Kong-based steamship company").

It is self-evident that the case at bar cannot be correlated with the state compulsion test: nothing in the Complaint suggests that the State coerces the APL to act in one way or another. In the same vein, since the freight-shipping services performed by the APL cannot be analogized to the acts of exercising powers that have been reserved, traditionally and exclusively, to the State, the public function test cannot be implicated by the circumstances at bar.[14] By the same token, the nexus/joint action test is inapposite to the case at bar since the APL's profits cannot be qualified as indispensable to the financial success of any government agency.[15]

Finally, if the Court were to hypothesize that the APL holds certain State-issued licenses or has to comply with certain State-promulgated regulations, such licenses and regulations do not transform the APL into a state actor within the meaning of the entwinement test. See, e.g., Doug Grant, Inc. v. Greate Bay Casino Corp., 232 F.3d 173 (3d Cir. 2000) (regulations and licenses of casino activities did not transform casinos into state actors for purposes of § 1983); Comiskey v. JFTJ Corp., 989 F.2d 1007 (8th Cir. 1993) (holding that a bar was not a state actor even though the State had issued a liquor license to the bar); Wagner v. Metropolitan Nashville Airport Authority, 772 F.2d 227 (6th Cir. 1985) (an air carrier, which leases airport space from state entity and was required to obtain approval of its security plan from the Federal Aviation Agency,

---

[14] The fact that the APL performs a service that benefits the public at large cannot be construed as indicating that the APL is acting under color of law. See, e.g., UAW, Local 5285 v. Gaston Festivals, 43 F.3d 902 (4th Cir. 1995) (a corporation that organized a municipal festival was not state actor for purposes of Section 1983 because the process of organizing festivals and fairs is not a traditionally exclusive government function).

[15] Even if the Court were to presume that the APL's profits result in taxation or that the APL pays fees for a land lease, such presumptions would not transform the APL into a state actor. See, e.g., Millenson v. New Hotel Monteleone, Inc., 475 F.2d 736 (5th Cir. 1973) (collection of sales tax does not transform a business into a state actor); see also Golden v. Biscayne Bay Yacht Club, 530 F.2d 16 (5th Cir. 1976) (a private yacht club was not a state actor even if it leased bay bottom land underlying its docks from the State since there was no sufficient nexus between leasing land and the club's allegedly discriminatory membership policies).

did not act under color of law); United Mine Workers of America, Inc. v. Wellmore Coal Corp., 609 F.2d 1083 (4th Cir. 1979) (coal companies and a railroad company were not state actors even though they obtained State-issued injunctions restricting unionized activities); Bethel v. Jendoco Constr. Corp., 570 F.2d 1168 (3d Cir. 1978) (the fact that construction companies were protected and regulated as "legal entities" of the State was insufficient to bring the conduct of these companies within the purview of Section 1983, even if these companies received a portion of their income from projects financed, in whole or in part, by state governmental agencies); Millenson, 475 F.2d 736 (a hotel restaurant which excluded women was not acting under color of law, even though the hotel and its restaurant operated under various licenses issued by the State); Afkhami v. Carnival Corp., 305 F. Supp. 2d 1308 (S.D. Fla. 2004) (regulations of cruise shipping industry did not transform a cruise ship company into a state actor even if it used government-owned ports).

Since Plaintiff's pleading does not provide the Court with any plausible facts from which the Court could conclude that the APL is a state actor, Plaintiff's Section 1983 challenges are subject to dismissal for failure to meet the color of law requirement. This is so regardless of Plaintiff's personal belief that the APL's actions constituted "law enforcement." Accordingly, Defendants' motion will be granted as to Plaintiff's Section 1983 claims.

### C. **Inapplicability of Employment or Federally-Funded-Entity Provisions**

As noted supra, in addition to his Section 1983 challenges, Plaintiff makes passim references to employment law and the statutes governing federally-funded projects and entities. However, nothing in Plaintiff's Complaint suggests that there has been an employment or employment-like relationship between Plaintiff and the APL or its agents, or that the APL is a

federally-funded project or enterprise. Moreover, as is well detailed in Defendants' moving papers, even assuming that Plaintiff pled an employment relationship, Plaintiff's employment claims are procedurally unexhausted and substantively meritless, and he offers no facts suggesting that the APL receives federal funds. See Defs.' Mot. at 14-17.

D. **Claim Preclusion as a Ground for Dismissal and Denial of Leave to Amend**

The above-detailed shortcomings of Plaintiff's federal challenges require dismissal of his Complaint. In a typical scenario, such dismissal would be without prejudice. See DelRio-Mocci v. Connolly Prop. Inc., 672 F.3d 241, 251 (3d Cir. 2012) (courts freely grant leave to amend a deficient pleading); see also Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000) (same). Here, however, a prejudicial dismissal appears warranted since Plaintiff's claims either repeat or are derivative from his claims already adjudicated in the state forum. See Foman v. Davis, 371 U.S. 178, 182 (1962) (leave to amend is not warranted if the plaintiff's challenges make it abundantly clear that such amendment would be futile).

Indeed, in light of Plaintiff's prior state litigation, Defendants maintain that Plaintiff's challenges are barred by the doctrines of res judicata and collateral estoppel.[16] This Court agrees.

---

[16] "Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." Allen v. McCurry, 449 U.S. 90, 94 (1980). In determining whether issue identity is met, "the issue must have been material to the first action . . . and essential to the decision rendered therein, and it must be the point actually determined in the second action . . . such that a different judgment in the second would destroy or impair rights or interests established by the first." In re Bed Bath & Beyond Inc., No. 06-5107, 2007 U.S. Dist. LEXIS 85213, at *16 (D.N.J. Nov. 19, 2007) (citations and internal quotation marks omitted). Additionally, "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." Id. Moreover,

> [a] "cause of action" may denote one of several separately stated claims in a pleading based on the same congeries of facts but related to different legal

11

When determining the preclusive effect a state court ruling might have on a federal proceeding, federal courts turn to the state's law of preclusion. See Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984). In New Jersey, a claim is barred when: (1) the judgment in the prior action is valid, final and on the merits; (2) the parties in the later action are identical to or in privity with those in the prior action; and (3) the claim in the later action grows out of the same transaction, relation or set of occurrences as the claim adjudicated in the earlier action. See Watkins v. Resorts Int'l Hotel & Casino, Inc., 124 N.J. 398, 412 (1991). "Claim preclusion applies not only to matters actually determined in an earlier action, *but to all relevant matters that could have been so determined.*" Id. (citing Angel v. Bullington, 330 U.S. 183, 192-93 (1947)) (emphasis supplied). Thus, the doctrine of res judicata necessarily implicates the entire controversy doctrine if it involves a state law adjudication.[17]

Here, Plaintiff complains about Defendants' alleged religious discrimination that took place in November 2011. See Compl. at 7. Judge Chrystal's decision was entered on June 29, 2012, see Defs.' Ex., Docket Entry No. 8-1, at 4, and it adjudicated Plaintiff's claims that

---

theories of recovery. A "cause of action" may also denote a separately stated claim on the same congeries of facts, but for different legal relief. But even if there are variations in the facts alleged, or different relief is sought, the separately stated "causes of action" may nevertheless be grounded on the same gravamen of the wrong upon which the action is brought. In the sense of res judicata or claim preclusion, although there may be separately stated or stateable causes of action, they are nevertheless based on the same "cause of action."

Id. (citations and internal quotation marks omitted).

[17] The core principle of the entire controversy doctrine, codified in N. J. Ct. R. 4:30A, provides that "the adjudication of a legal controversy should occur in one litigation in only one court." Joel v. Morrocco, 147 N.J. 546, 548 (1997). Specifically, Rule 4:30A states, "Non-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine, except as otherwise provided by R[ule] 4:64-5 (foreclosure actions) and R[ule] 4:67-4(a) (leave required for counterclaims or cross-claims in summary actions)."

Defendants discriminated against him on religious grounds during the pre-December 21, 2011 period. See id. at 12. Since Plaintiff's challenges were either already raised or, at the very least, had to be raised before Judge Chrystal, her dismissal of Plaintiff's claims precludes Plaintiff's instant challenges and, paramount here, makes clear that granting Plaintiff leave to amend his Complaint would be futile. Were Plaintiff to present amended claims, those too would be precluded by Judge Chrystal's adjudication under the res judicata and entire controversy doctrines. Accord Watkins, 124 N.J. at 412. Therefore, Defendants' motion will be granted in its entirety, and Plaintiff's Complaint will be dismissed with prejudice.

### III. CONCLUSION

For the foregoing reasons, Defendants' motion will be granted. All Plaintiff's federal claims will be dismissed with prejudice. Plaintiff's state claims will be dismissed without prejudice to litigation in state court.[18] Plaintiff's application, Pl.'s Letter, Docket Entry No. 15, seeking to strike Defendants' response to Plaintiff's unauthorized sur-reply, will be dismissed as moot.

---

[18] Where the federal claims are dismissed and diversity jurisdiction is lacking, the district court may decline to exercise supplemental jurisdiction over the remaining state law claims under 28 U.S.C. § 1367(c). See Maio v. Aetna, Inc., 221 F.3d 472, 480 n.6 (3d Cir. 2000); Hedges v. Musco, 204 F.3d 109, 123 (3d Cir. 2000) (the District Court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so); Borough of West Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995) (a district court is required to decline to exercise supplemental jurisdiction, absent a countervailing reason, if the court disposed of all federal claims providing it with original jurisdiction). This Court's dismissal will not affect the timeliness of Plaintiff's state's claims, if such are present. See 28 U.S.C. § 1367(d) ("The period of limitations for any [supplemental jurisdiction] claim . . . shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period"); Huertas v. City of Camden, No. 08-2042, 295 F. App'x 484, 486 (3d Cir. 2008) (elaborating on the same).

An appropriate Order accompanies this Opinion.

/s/ Claire C. Cecchi

**Claire C. Cecchi,**
United States District Judge

**Dated: July 31, 2013**